IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALMER LEE REYAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:18-cv-01485 |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | (Judge Mariani) |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, CAPTAIN RANDY EVANS | : | JURY TRIAL DEMANDED |
| SERGEANT RICHARD HIBSHMAN, | : | |
| CORRECTIONS OFFICER SAMUEL LARTY, | : | |
| CORRECTIONS OFFICER RICHARD KISTLER, | : | |
| CORRECT CARE SOLUTIONS, DR. VANITHA | : | |
| ABRAHAM, DR. THEODOOR VOORSTAD, | : | |
| DR. SCOTT MORGAN, DR. JEAN HOLDREN, | : | |
| PA-C NICOLE ODEM, PA-C MARK HAMMER, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### I.    PRELIMINARY STATEMENT

This is a civil rights action brought pursuant to 42 U.S.C. §1983 for violations of plaintiff's rights under the Eighth Amendment to the United States Constitution; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132; and the Rehabilitation Act of 1973, 29 U.S.C. § 794. While Mr. Reyan was incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania (SCI Camp Hill), he had limited mobility due to chronic and severe arthritis and a dislocated patella in his right knee. Defendants failed to provide plaintiff with proper accommodations and were deliberately indifferent to his serious medical condition, which resulted in his falling down a staircase and sustaining physical and emotional injuries. The medical defendants are also deliberately indifferent and negligent for failing to ensure that plaintiff consulted with and followed through with recommendations of an orthopedic surgeon

1

outside the prison in regard to his knee. The medical and DOC defendants are also deliberately indifferent for failing to provide him with and/or allow him to have/use a knee brace and/or assistive device to support his knee, which has caused him severe pain and suffering.

## `II.     JURISDICTION AND VENUE

1.	The Court has jurisdiction over the subject matter of this complaint under 42 U.S.C. § 1983 and 28 U.S. C. §§ 2201, 2202, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (a).

2.	The court has jurisdiction under 28 U.S.C. §§ 1331 over the constitutional claims, as well as those arising under 42 U.S.C. § 1343 (a) (3), § 1343 (a) (4), § 12132, § 1367 (a) and § 794.

3.	Venue is proper pursuant to 28 U.S.C. § 1391 (b) (2) because events giving rise to this action occurred in Cumberland County, Pennsylvania, within the Middle District.

## III.     PARTIES

4.	Plaintiff, Dalmer Lee Reyan who is 43 years old, was at all times relevant to this complaint, an inmate at the State Correctional Institution at Camp Hill in Cumberland County, Pennsylvania, the State Correctional Institution at Pittsburgh in Allegheny County, Pennsylvania and the State Correctional Institution at Mercer in Mercer County, Pennsylvania.

5.	Defendant Pennsylvania Department of Corrections ("DOC") is an agency of the State of Pennsylvania that operates/operated SCI Camp Hill, SCI Pittsburgh and SCI Mercer. The principal office for the DOC is located in Mechanicsburg, Pennsylvania in Cumberland County, Pennsylvania.

6.	Defendant Captain Randy Evans is and was at all times relevant hereto, employed as a security captain by the Pennsylvania Department of Corrections to perform duties in the

State Correctional Institution at Camp Hill and acted under the color of state law. At all relevant times, defendant Captain Randy Evans was acting in such capacity as the agent, servant and employee of the Pennsylvania Department of Corrections. He is sued in his individual capacity.

7. Defendant Sergeant Richard Hibshman is and was at all times relevant hereto, employed as a sergeant by the Pennsylvania Department of Corrections who worked in or around the control booth inside the main entrance to SCI Camp Hill at the location where plaintiff fell down the stairs and he performed duties in the State Correctional Institution at Camp Hill and acted under the color of state law. At all relevant times, defendant Sergeant Richard Hibshman was acting in such capacity as the agent, servant and employee of the Pennsylvania Department of Corrections. He is sued in his individual capacity.

8. Defendant Corrections Officer Samuel Larty is and was at all times relevant hereto, a corrections officer employed by the Pennsylvania Department of Corrections to perform duties in the State Correctional Institution at Camp Hill and acted under the color of state law. At all relevant times, defendant Corrections Officer Samuel Larty was acting in such capacity as the agent, servant and employee of the Pennsylvania Department of Corrections. He is sued in his individual capacity.

9. Defendant Corrections Officer Richard Kistler is and was at all times relevant hereto, a corrections officer employed by the Pennsylvania Department of Corrections to perform duties in the State Correctional Institution at Camp Hill and acted under the color of state law. At all relevant times, defendant Corrections Officer Richard Kistler was acting in such capacity as the agent, servant and employee of the Pennsylvania Department of Corrections. He is sued in his individual capacity.

10. Defendant, Correct Care Solutions ("CCS") with a principal place of business in Nashville, Tennessee and a Pennsylvania regional office in Lemoyne, Pennsylvania and which operates under color of state law, was at all times relevant to this complaint, the employer of the medical defendants and the holder of a contract with the DOC to provide health care to inmates at SCI Camp Hill, SCI Pittsburgh, SCI Mercer and elsewhere and was responsible for adopting policies and implementing procedures and practices in regard to providing medical services for inmates incarcerated at all Pennsylvania state prisons, including SCI Camp Hill, SCI Pittsburgh and SCI Mercer.

11. Defendant, Vanitha Abraham, who acted under the color of state law, at all relevant times to this complaint, was employed upon information and belief as a physician and a medical director at SCI Camp Hill, and was employed by defendant CCS and assigned to provide medical services at SCI Camp Hill in 2016. She is sued in her individual capacity.

12. Defendant, Theodoor Voorstad, who acted under the color of state law, at all relevant times to this complaint, was employed upon information and belief as a physician and a medical director at SCI Camp Hill, was employed by defendant CCS and assigned to provide medical services at SCI Camp Hill in 2016. He is sued in his individual capacity.

13. Defendant Dr. Scott Morgan, who acted under the color of state law, at all relevant times to this complaint, was employed as a physician and the medical director at SCI Mercer, was employed by defendant CCS and assigned to provide medical services at SCI Mercer in 2017 and 2018. He is sued in his individual capacity.

14. Defendant, Dr. Jean Holdren, who acted under the color of state law, at all relevant times to this complaint, is employed as a physician and the medical director at SCI

Mercer, employed by defendant CCS and assigned to provide medical services at SCI Mercer from in or about May 2018 to the present time. She is sued in her individual capacity.

15. Defendant, Physician Assistant Nicole Odem, who acted under the color of state law, at all relevant times to this complaint, was employed as a physician assistant at SCI Mercer, employed by defendant CCS and assigned to provide medical services at SCI Mercer in 2017 through the present time. She is sued in her individual capacity.

16. Defendant, Physician Assistant Mark Hammer, who acted under the color of state law, at all relevant times to this complaint, was employed as a physician assistant at SCI Pittsburgh, employed by defendant CCS and assigned to provide medical services at SCI Pittsburgh in 2016 and at SCI Mercer from in or about 2017 through the present time. He is sued in his individual capacity.

## IV.   FACTUAL ALLEGATIONS

17. Plaintiff, Dalmer Reyan, was an inmate at SCI Camp Hill starting in or about March 2016. After his transfer to SCI Pittsburgh in the Spring of 2016, plaintiff returned to SCI Camp Hill in or about June 2016 and remained there, with the exception of a transfer for a short time to York County Prison, until about October 2016.

18. Plaintiff was transferred to SCI Pittsburgh in or about October 2016 and he was moved to his current location at SCI Mercer in or about January 2017.

19. In or about October 2015, prior to plaintiff's incarceration, he had surgery to stabilize his right knee due to significant arthritis.

20. In or about February 2016, while plaintiff was in the Bedford County Jail in Bedford, Pennsylvania, he fell in his cell and dislocated his right knee.

21. When plaintiff entered SCI Camp Hill in or about March 2016, his right knee was dislocated and severely arthritic, which made it difficult for him to ambulate.

22. In or about March 2016, the medical defendants issued a restriction that plaintiff was to be housed on a bottom bunk at SCI Camp Hill due to his chronic knee condition, but, upon information and belief, there was no bottom tier restriction at that time.

23. Plaintiff was forced to go up and down the steps with great difficulty at SCI Camp Hill when he first arrived in March 2016 until in or about April 2016, when the SCI Camp Hill Medical Department issued a written Physicians Order stating that plaintiff would be restricted to the ground floor and a lower bunk due to his chronic right knee condition.

24. Plaintiff was housed on N block at SCI Camp Hill on July 26, 2016.

25. On July 26, 2016, plaintiff was scheduled to be transferred from SCI Camp Hill to SCI Pittsburgh.

26. Prior to when plaintiff's transfer was set to take place, SCI Camp Hill prison officials told him to pack up his belongings to prepare for the transfer to SCI Pittsburgh the next day.

27. At or about 3:00 p.m. on July 26, 2016, when SCI Camp Hill was locked down, SCI Camp Hill prison officials requested that plaintiff submit to a urine test with Captain Randy Evans, who was a security captain at SCI Camp Hill, and/or staff members under his supervision.

28. A corrections officer from SCI Camp Hill escorted plaintiff from his cell block to the main building of SCI Camp Hill to a floor below defendant Captain Randy Evans' office.

29. When plaintiff arrived in the area of the control booth where defendant Sergeant Richard Hibshman was located, plaintiff asked defendant Hibshman to inform defendant Evans

6

that he could not climb the steps due to ground floor restrictions in plaintiff's medical file because of his knee condition.

30. Defendant Sergeant Hibshman then requested that the corrections officer in the control booth call up to defendant Captain Evans in regard to plaintiff's medical restriction, at which time defendant Evans yelled down and cursed, saying that he did not care about plaintiff's medical restrictions; that plaintiff was required to climb the stairs to see defendant Captain Evans and to give a urine; and if plaintiff refused, he would be disciplined and taken to the Restricted Housing Unit at the prison.

31. Plaintiff then climbed up two to three sets of stairs with great difficulty, where he met defendant Captain Evans and a staff member/members under his supervision; and gave a urine sample, which turned out to be negative.

32. After plaintiff had already climbed the steps and gave a urine sample, defendant Captain Evans called the medical department to verify plaintiff's medical restrictions and then told defendant Corrections Officer Samuel Larty and defendant Corrections Officer Richard Kistler, who worked as corrections officers at SCI Camp Hill, to escort plaintiff back down the three sets of stairs to the ground floor because of plaintiff's medical condition.

33. Defendant Captain Evans instructed defendants Corrections Officers Larty and Kistler to position themselves, one in front of and one behind plaintiff while he descended the stairs back to the ground floor of the prison due to medical restrictions related to plaintiff's knee condition.

34. Defendants Corrections Officers Larty and Kistler did not follow the protocol ordered by defendant Captain Evans and did not position themselves in front of and behind plaintiff while he went down the stairs.

35. While plaintiff was descending the stairs, his right knee gave out and he fell down at least two flights of stairs, hitting and injuring his head, neck, hip, lower back and right knee.

36. Following his fall, plaintiff was taken to the prison infirmary and then by ambulance to the Emergency Room of Holy Spirit Hospital in Camp Hill, Pennsylvania.

37. Plaintiff was treated for head, back and knee pain. He was given a cervical collar for his neck and back; fluid was aspirated from his knee; a brace was recommended for the knee; and plaintiff was instructed to follow up with Dr. Sumas, a neurosurgeon who worked outside of the prison, on September 7, 2016.

38. When plaintiff returned to SCI Camp Hill, he was placed in the infirmary overnight for observation and treatment for his injuries.

39. Plaintiff saw an orthopedic physician outside the prison on one occasion on August 19, 2016, at which time the doctor attempted without success to drain fluid from plaintiff's knee and recommended a follow-up surgical consultation, physical therapy and a knee brace and/or assistive device.

40. The medical defendants never took any appropriate steps to ensure that: plaintiff followed up with an orthopedic specialist for a surgical evaluation following his visit with the specialist; received physical therapy; or that plaintiff obtained and/or had at all times a knee brace and/or assistive devices to support his knee.

41.     As a result of the fall, plaintiff suffered severe and continuing pain in his right knee, which has persisted up to the present time.

42.     Plaintiff's fall caused his pre-existing knee condition to worsen significantly.

43.     As a result of the fall, plaintiff made numerous sick call visits to the SCI Camp Hill, SCI Pittsburgh and SCI Mercer infirmaries due to severe pain in his knee through the present time for which he has been prescribed ibuprofen, a knee brace, a knee sleeve, a wrap and a cane.

44.     On many occasions from 2016 through the present time, while at SCI Camp Hill, SCI Pittsburgh and SCI Mercer, plaintiff has been without a knee brace, knee sleeve, a wrap and/or a cane or any assistive device, despite the fact that they were prescribed to him, because the medical and DOC defendants failed to take appropriate steps to ensure that plaintiff had access to these devices.

45.     Plaintiff often suffered and suffers with increased pain in his right and left knees when he lacked the devices to support his right knee on many occasions from 2016 to the present time.

46.     On numerous occasions at SCI Camp Hill , SCI Pittsburgh and SCI Mercer, plaintiff's oral and written requests to the medical defendants to see/follow up with an outside knee specialist for a surgical consultation to diagnose and treat his knee; and for a brace or other assistive devices for his knee have been ignored, denied and/or not acted upon.

47.     On or about June 26, 2018, plaintiff saw defendant Holdren at SCI Mercer for evaluation and treatment for his knee and to request to see a knee specialist outside of the prison for a surgical consultation and evaluation.

48. Defendant Holdren and the SCI Mercer medical defendants under her supervision informed plaintiff on that date and other dates that he did not qualify to see a specialist and/or that he remained on the waitlist to see a specialist; and defendant Holdren never followed up with plaintiff after that visit and other visits, as promised.

49. Plaintiff saw defendants Abraham, Morgan, Holdren, Voorstad, Odem and Hammer at SCI Camp Hill, SCI Pittsburgh and SCI Mercer from 2016 to the present time for diagnosis and treatment of severe pain in his right knee and to request a referral to an outside specialist for a surgical consultation.

50. The medical defendants have denied, delayed and/or put plaintiff on a waitlist for the past 26 months to see a specialist for a surgical consultation, evaluation and/or treatment to repair the major damage to his knee.

51. As a direct and proximate result of the SCI Camp Hill corrections officer defendants requiring plaintiff to use the stairs and the medical defendants failing to ensure that he saw a knee specialist for evaluation and treatment, plaintiff suffered and continues to suffer with severe pain in both knees; swelling; discomfort; difficulty with mobility; difficulty sleeping and psychological pain and suffering, some or all of which may be permanent.

52. As a result of defendant DOC and the SCI Camp Hill corrections defendants' failure to accommodate plaintiff and to force him to use stairs when he had a known disability, plaintiff suffered further physical injuries, mental anguish, anxiety and fear that he would be further injured.

53. The DOC receives federal funding.

### V. ADMINISTRATIVE REMEDIES

54. Plaintiff has exhausted all administrative remedies to the fullest extent possible

### VI. CLAIMS FOR RELIEF

**Count I- Deprivation of Eighth Amendment Right Not to Undergo Cruel and Unusual Punishment v. Defendants Evans, Hibshman, Larty and Kistler**

55. The allegations set forth in paragraphs 1-54 inclusive, are incorporated as if fully set forth herein.

56. Defendants Captain Evans, Sergeant Hibshman and Corrections Officers Larty and Kistler, through their deliberate indifference to plaintiff's inability to walk up and down the stairs, caused plaintiff to suffer severe physical pain and emotional distress to an unconscionable degree and well in excess of that which normally attends prison life.

57. The foregoing conduct of defendants Captain Evans, Sergeant Hibshman and Corrections Officers Larty and Kistler, acting under color of state law, was undertaken in concert and conspiracy and as part of an effort to deprive plaintiff of his civil and constitutional rights, including plaintiff's rights, privileges and immunities under the Eighth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

58. As a direct and proximate result of the defendants' illegal and unconstitutional actions, plaintiff suffered and suffers pain, fear, anxiety, physical injuries, severe emotional trauma and the loss of the enjoyment of life, all to his great detriment and loss.

**Count II – Deprivation of Eighth Amendment Right Not to Undergo Cruel and Unusual Punishment- Denial of Medical Treatment v. Medical Defendants**

59. The allegations set forth in paragraphs 1 through 58, inclusive, are incorporated as if fully set forth herein.

60. Defendants Abraham, Voorstad, Morgan and Holdren all hold or held the positions of medical director and/or physician at the medical departments at SCI Camp Hill and SCI Mercer and are/were employed by the Pennsylvania DOC.

61. Defendant Correct Care Solutions ("CCS") employed the individual medical defendants and holds a contract with the DOC to provide health care to inmates at SCI Camp Hill, SCI Pittsburgh, SCI Mercer and elsewhere and was responsible for adopting policies and implementing procedures and practices in regard to providing medical services for inmates incarcerated at all Pennsylvania state prisons, including SCI Camp Hill, SCI Pittsburgh and SCI Mercer.

62. Defendant Hammer held the position of Physician Assistant at SCI Pittsburgh in or about 2016; defendants Hammer and Odem currently hold the positions of Physician Assistant at SCI Mercer; and both defendants are employed by the Pennsylvania DOC.

63. Defendant Abraham, who was medical director at SCI Camp Hill in or about 2016, saw plaintiff in 2016 and failed to ensure that plaintiff was sent out for a surgical evaluation and treatment by a knee specialist outside the prison and that plaintiff have access to an assistive device to support his knee.

64. Defendant Voorstad, who, upon information and belief, was a medical director at SCI Camp Hill in or about 2016, saw plaintiff in 2016 and failed to ensure that plaintiff was sent out for a surgical evaluation and treatment by a knee specialist outside the prison and that plaintiff have access to an assistive device to support his knee.

65. Defendant Morgan, who was medical director at SCI Mercer in or about 2016 through 2018, saw plaintiff on numerous occasions in 2016 through 2018 and failed to ensure

that plaintiff was sent out for a surgical evaluation and treatment by a knee specialist outside the prison and that plaintiff have access to an assistive device to support his knee.

66. Defendant Odem, who was a physician assistant at SCI Mercer in or about 2016 through 2018, saw plaintiff on numerous occasions and failed to follow through on a recommendation that client be sent out for a surgical evaluation and treatment by a knee specialist and that plaintiff have access to an assistive device to support his knee.

67. Defendant Hammer, who was a physician assistant at SCI Pittsburgh in or about 2016 and currently at SCI Mercer, saw plaintiff in 2016 and in 2017 and 2018 and failed to follow through on a recommendation that plaintiff be sent out for a surgical evaluation and treatment by a knee specialist and that plaintiff have access to an assistive device to support his knee.

68. Defendant CCS failed to ensure that the individual medical defendants under its supervision and control followed through on recommendations that plaintiff be sent out for surgical evaluation and treatment by a knee specialist and that plaintiff have access to an assistive device to support his knee.

**Count III – Exclusion from Services of a Public Entity in Violation of the Americans with Disabililties Act v. DOC**

69. The allegations set forth in paragraphs 1 through 68 inclusive, are incorporated as if fully set forth herein.

70. Defendant Department of Corrections failed to accommodate plaintiff by requiring him to climb up and down the stairs to take a urine test and on other occasions in 2016 at SCI Camp Hill, a public entity, due to plaintiff's disability in violation of Title II and Title III of the Americans with Disabilities Act.

**Count IV – Exclusion from Services of a Federally Funded Entity in Violation of the Rehabilitation Act v. DOC**

71. The allegations set forth in paragraphs 1 through 70 inclusive, are incorporated as if fully set forth herein.

72. Defendant Department of Corrections failed to accommodate plaintiff by requiring him to climb up and down the stairs to take a urine test and on other occasions in 2016 at SCI Camp Hill, a public entity, due to plaintiff's disability in violation of Section 504 of the Rehabilitation Act.

**Count V – State Law Negligence Claims v. Medical Defendants and Correct Care Solutions**

73. Plaintiff incorporates paragraphs 1 through 72 of this complaint as though fully set forth herein.

74. The medical defendants had a duty to comply with generally accepted medical standards of care in their medical treatment of plaintiff.

75. The medical defendants violated their duty of care to plaintiff.

76. The medical defendants' violation of their duty of care to plaintiff was a direct and proximate cause and a substantial factor in bringing about plaintiff's damages as outlined above, and, as a result the medical defendants are liable to plaintiff.

77. Because the individual medical defendants were acting as agents, servants and/or employees of defendant Correct Care Solutions and because the medical defendants were acting within the scope and course of their employment, and under the direct control and supervision of defendant Correct Care Solutions, defendant Correct Care Solutions is liable to plaintiff on the basis of *respondeat superior* liability.

## **PUNITIVE DAMAGES**

78. Plaintiff incorporates paragraphs 1 through 77 of this complaint as though fully set forth herein.

79. The conduct of the individual defendants was outrageous, malicious, wanton, willful, reckless and intentionally designed to inflict harm upon plaintiff.

80. As a result of the actions of the individual defendants alleged in the preceding paragraphs, plaintiff is entitled to punitive damages as to each cause of action.

## **JURY DEMAND AND RELIEF DEMANDED**

81. Plaintiff demands a jury as to each defendant and as to each count.

WHEREFORE, plaintiff requests the following relief:

a. Compensatory damages;

b. Punitive damages;

c. Reasonable attorney's fees and costs; and

d. Such other and further relief as appears reasonable and just.


Respectfully Submitted,

/s/ Laurie R. Jubelirer
Laurie R. Jubelirer, Esquire
Attorney I.D. 50436
Jubelirer Law, LLC
600 West Germantown Pike
Suite 400
Plymouth Meeting, PA  19462
*Attorney for Plaintiff*

Date: October 27, 2018

**<u>CERTIFICATE OF SERVICE</u>**

  I, Laurie R. Jubelirer, Esquire, served a copy of Plaintiff's First Amended Complaint on counsel for defendants, Lauren Sulcove, Esquire, Mark Hamilton, Esquire and Paula Koczan, Esquire, by electronic mail.

             <u>/s/ Laurie R. Jubelirer</u>
             Laurie R. Jubelirer, Esquire
             Attorney I.D. 50436
             Jubelirer Law, LLC
             600 West Germantown Pike
             Suite 400
             Plymouth Meeting, PA  19462
             *Attorney for Plaintiff*

Date: October 27, 2018