IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALMER LEE REYAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:18-cv-01485 |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | (Judge Mariani) |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, CAPTAIN RANDY | : | JURY TRIAL DEMANDED |
| EVANS , SERGEANT RICHARD | : | |
| HIBSHMAN, CORRECTIONS OFFICER | : | |
| SAMUEL LARTY, CORRECTIONS | : | |
| OFFICER RICHARD KISTLER, | : | |
| CORRECTCARE SOLUTIONS, DR. | : | |
| VANITHA ABRAHAM, DR. THEODOOR | : | |
| VOORSTAD, DR. SCOTT MORGAN, | : | |
| DR. JEAN HOLDREN, PA-C NICOLE | : | |
| ODEM, PA-C MARK HAMMER, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ISSUE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiff, Dalmer Reyan, by and through his attorney, Laurie R. Jubelirer, Esquire, hereby responds in opposition to the DOC Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and in support thereof, incorporates by reference the attached Memorandum of Law as if fully set forth herein.

## I.   <u>PROCEDURAL HISTORY</u>

Plaintiff, Dalmer Reyan, an inmate at the State Correctional Institution at Mercer and a former inmate at the State Correctional Institutions at Pittsburgh and Camp Hill, brings civil rights claims against the Department of Corrections ("DOC") defendants and the medical defendants based on their failure to provide plaintiff with proper accommodations and their deliberate indifference to his serious medical condition, a dislocated and severely arthritic right knee, which resulted in his falling down a staircase at SCI Camp Hill on July 26, 2016, and sustaining physical and emotional injuries, pursuant to the Eighth Amendment and 42 U.S.C. § 1983; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132; the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Amended Compl. Doc. No. 16); and state negligence claims.

The DOC defendants are the Pennsylvania Department of Corrections, Captain Randy Evans, Sergeant Richard Hibshman and Corrections Officers Samuel Larty and Richard Kistler, <u>Id</u>. The medical providers are Correct Care Solutions, Dr. Vanitha Abraham, Dr. Theodoor Voorstad, Dr. Scott Morgan, Dr. Jean Holdren and Physician Assistants Nicole Odem and Mark Hammer. <u>Id</u>.

The DOC defendants seek judgment in their favor on defendants' federal claims that plaintiff failed to properly exhaust his available administrative

remedies under the Prison Litigation Reform Act of 1995. Plaintiff opposes the

DOC defendants' motion.

## II.   <u>STATEMENT OF FACTS PERTAINING TO EXHAUSTION</u>

Plaintiff, Dalmer Reyan, was an inmate at SCI Camp Hill starting in or about

March 2016. Amended Compl. ¶ 17, Doc. No. 16; <u>see also</u> Moves Report, attached

hereto as Exhibit B, page 1.  In or about October 2015, prior to plaintiff's

incarceration, he had surgery to stabilize his right knee due to significant arthritis.

Amended Compl. ¶ 19, Doc. No. 16; <u>see also</u> plaintiff's deposition, attached hereto

as Exhibit A, at pp. 17-18. While plaintiff was in the Bedford County Jail in

Bedford, Pennsylvania, in or about February 2016, he fell in his cell and dislocated

his right knee. Amended Compl. ¶ 20, Doc. No. 16; Ex. A at p. 19. When plaintiff

entered SCI Camp Hill in or about March 2016, his right knee was dislocated and

severely arthritic, which made it difficult for him to ambulate. <u>Id</u>.

In or about March 2016, the medical defendants issued a restriction that

plaintiff was to be housed on a bottom bunk at SCI Camp Hill due to his chronic

knee condition, but there was no bottom tier restriction at that time. Amended

Compl. ¶ 22, Doc. No. 16.

Plaintiff was forced to go up and down the steps with great difficulty at SCI

Camp Hill when he first arrived in or about March 2016 until in or about April

2016, when the SCI Camp Hill Medical Department issued a written Physicians

Order stating that plaintiff would be restricted to the ground floor and a lower bunk due to his chronic right knee condition. Amended Compl. ¶ 23, Doc. No. 16; Ex. A at pp. 26-27, 30, 122.

After his transfer to SCI Pittsburgh in the Spring of 2016, plaintiff returned to SCI Camp Hill in or about June 2016 and remained there, with the exception of numerous transfers to and from York County Prison, SCI Benner and SCI Pittsburgh from September through November 2016. Ex. A at pp. 36-41, 43-44; Ex. B. Plaintiff was transferred to York County Prison two times, in September and November 2016 to attend a preliminary hearing. Ex. A at pp. 37, 40, 50-55; Ex. B at p. 1. Plaintiff felt that he was being "bounced all over the place" due to the numerous transfers. Ex. A at pp. 39; 44.

Prior to and after the numerous transfers when plaintiff returned to SCI Camp Hill, he was placed on R block for a period of weeks. Ex. A at pp. 39, 43-45. On R block, plaintiff had difficulty getting any paperwork to be able to prepare and submit grievances and appeals. Ex. B at pp. 43, 110-111. Plaintiff was moved to his current location at SCI Mercer in or about January 2017, where he has been through the present time. Amended Compl. ¶ 18, Doc. No. 16; Ex. B at p. 1.

On July 26, 2016 when plaintiff was scheduled to be transferred from SCI Camp Hill to SCI Pittsburgh, he was housed on N block at SCI Camp Hill. Amended Compl. ¶¶ 24-25, Doc. No. 16; Ex. A at p. 24.  Prior to when plaintiff's

transfer was set to take place, SCI Camp Hill prison officials told him to pack up his belongings to prepare for the transfer to SCI Pittsburgh the next day. Amended Compl. ¶ 26, Doc. No. 16; Ex. A at p. 24.

At or about 3:00 p.m. on July 26, 2016, when SCI Camp Hill was locked down, SCI Camp Hill prison officials requested that plaintiff submit to a urine test with Captain Randy Evans, who was a security captain there, and/or staff members under his supervision. Amended Compl. ¶ 27, Doc. No. 16; Ex. A at p. 24. A corrections officer from SCI Camp Hill escorted plaintiff from his cell block to the main building of SCI Camp Hill to a floor below defendant Captain Randy Evans' office. Amended Compl. ¶ 28, Doc. No. 16; Ex. A at p. 25.

When plaintiff arrived in the area of the control booth where defendant Sergeant Richard Hibshman was located, plaintiff asked defendant Hibshman to inform defendant Evans that he could not climb the steps due to ground floor restrictions in plaintiff's medical file because of his knee condition. Amended Compl. ¶ 29, Doc. No. 16; Ex. A at pp. 25-26.

Defendant Sergeant Hibshman requested the corrections officer in the control booth to call up to defendant Captain Evans in regard to plaintiff's medical restriction, at which time defendant Evans yelled down and cursed, saying that he did not care about plaintiff's medical restrictions; that plaintiff was required to climb the stairs to see defendant Captain Evans and to give a urine; and if plaintiff

refused, he would be disciplined and taken to the Restricted Housing Unit at the prison. Amended Compl. ¶ 30, Doc. No. 16; Ex. A at p. 26. Plaintiff then climbed up two to three sets of stairs with great difficulty, where he met defendant Captain Evans and a staff member/members under his supervision; and gave a urine sample, which turned out to be negative. Amended Compl. ¶ 31, Doc. No. 16; Ex. A at p. 26.

After plaintiff had already climbed the steps and gave a urine sample, defendant Captain Evans called the medical department to verify plaintiff's medical restrictions and then told defendant Corrections Officer Samuel Larty and defendant Corrections Officer Richard Kistler, who worked as corrections officers at SCI Camp Hill, to escort plaintiff back down the three sets of stairs to the ground floor because of plaintiff's medical condition. Amended Compl. ¶ 32, Doc. No. 16; Ex. A at p. 27.

Defendant Captain Evans instructed defendants Corrections Officers Larty and Kistler to position themselves, one in front of and one behind plaintiff while he descended the stairs back to the ground floor of the prison due to medical restrictions related to plaintiff's knee condition. Amended Compl. ¶ 33, Doc. No. 16; Ex. At at p. 27. Defendants Corrections Officers Larty and Kistler did not follow the protocol ordered by defendant Captain Evans and did not position

themselves in front of and behind plaintiff while he went down the stairs. Amended Compl. ¶ 34, Doc. No. 16; Ex. A at p. 27.

While plaintiff was descending the stairs, his right knee gave out and he fell down at least two flights of stairs, hitting and injuring his head, neck, hip, lower back and right knee. Amended Compl. ¶ 35, Doc. No. 16; Ex. A at pp. 27-28.

Following his fall, plaintiff was taken to the prison infirmary and then by ambulance to the Emergency Room of Holy Spirit Hospital in Camp Hill, Pennsylvania. Amended Compl. ¶ 36, Doc. No. 16; Ex. A at p. 31.  Plaintiff was treated for head, back and knee pain. He was given a cervical collar for his neck and back; fluid was aspirated from his knee; a brace was recommended for the knee; and plaintiff was instructed to follow up with Dr. Sumas, a neurosurgeon who worked outside of the prison, on September 7, 2016. Amended Compl. ¶ 37, Doc. No. 16; Ex. A at pp. 31-32.

When plaintiff returned to SCI Camp Hill, he was placed in the infirmary overnight for observation and treatment for his injuries. Amended Compl. ¶ 38, Doc. No. 16; Ex. A at p. 32.  Shortly thereafter, plaintiff was returned to general population. Ex. A at pp. 32-33.

Plaintiff submitted grievance number 644683 to the SCI Camp Hill Grievance Coordinator on September 11, 2016. See Official Inmate Grievance Form and Initial Review Response for Grievance Number 644683, attached hereto

as Exhibit C; Ex. B at pp 34-35. Prior to submitting the grievance, plaintiff submitted inmate requests to staff members to take the proper steps to obtain medical treatment and to seek investigation of the prison personnel who improperly required him to climb up and down the stairs. Id. The Grievance Coordinator prepared a response on September 28, 2016, denying plaintiff's grievance as frivolous, stating that plaintiff had a consultation with an outside specialist who did not recommend surgical intervention. Ex. C.

Plaintiff was transferred to York County Prison on two occasions and also to and from SCI Camp Hill, SCI Benner, SCI Mercer and SCI Pittsburgh shortly after he filed the grievance in the Fall of 2016. Ex. A at pp. 37-43; Ex. B at p. 1. He was put on R block when he returned to SCI Camp Hill, where there was a lack of paper to prepare and submit grievances and appeals. Id. at pp. 39-40. He was eventually transferred permanently to SCI Mercer, where he has resided since January 12, 2017. Ex. B at p. 1.

Since the incident on July 26, 2016 through the time of plaintiff's deposition in November 2019, plaintiff has seen a handful of specialists outside of the prison, many of whom recommended knee replacement surgery due to the severe pain that he suffers constantly. Ex. A at pp. 20-22, 70, 113, 119. Plaintiff suffers severe pain on a daily basis and the pain prevents him from sleeping at night. Id. at pp. 114-

115, 118.  Plaintiff's pain continues to worsen. Id. at pp. 118-119. Plaintiff has not received surgery for his knee as of the date of filing the within brief.

On many occasions from 2016 through the present time, while at SCI Camp Hill, SCI Pittsburgh and SCI Mercer, plaintiff has been without a knee brace, knee sleeve, a wrap and/or a cane or any assistive device, despite the fact that they were prescribed to him, because the medical and DOC defendants failed to take appropriate steps to ensure that plaintiff had access to these devices. Amended Compl. ¶ 44, Doc. No. 16; Ex. A at pp. 94-97, 102-104, 116-118.

On September 11, 2016, plaintiff submitted grievance number 644683 to the SCI Camp Hill Grievance Coordinator, complaining about the DOC's improper decision to make him go up and down the stairs for a drug test on July 26, 2016; and the medical department's failure to send him out to a specialist for the severe injury to his knee from the fall. Ex. A  at pp. 34-35, 119-120; Ex. C. Plaintiff prepared and submitted an appeal of this grievance to the warden at SCI Camp Hill while he was housed on R block at SCI Camp Hill. Ex. A at pp. 39-43, 120-121. Plaintiff was transferred from SCI Camp Hill to York County Prison and back to SCI Camp Hill on R block before he submitted this grievance. Ex. A at pp. 38-39. Plaintiff was bounced all over the place at this time. Id. at p. 39.

After plaintiff appealed the grievance to the SCI Camp Hill warden, he was transferred out of SCI Camp Hill four days later, so he never heard back from her.

Id. at pp. 41-43. He had to write the grievance appeal while on R block where they would not give him the proper grievance appeal paperwork. Id. at pp. 42-43, 63, 120. Plaintiff never received a response to his grievance appeal from the warden as he was transferred to and from York County Prison and SCIs Camp Hill, Benner and Pittsburgh. Id. at pp. 44-45. Plaintiff did not keep a copy of his appeal to the warden due to being in R block. Ex. A at p. 120.

Plaintiff appealed this grievance to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Ex. A at p. 46; see also plaintiff's appeal to SOIGA, attached hereto as Exhibit D. This document was filed by plaintiff right after he came back from York County Prison, which is when he received the response to his initial grievance. Ex. A at pp. 47-49. Plaintiff submitted the final appeal to the SOIGA because he never heard back from the warden and he believed that her response could have been sent to him when he was at the York County Prison when he was not in a place where he could have received it. Id. at pp. 120-121. Plaintiff never heard back from SOIGA after he submitted his appeal there as he was being transferred to different prisons and was not sure that his mail could get to him outside of SCI Camp Hill. Id. at pp. 121-122.

### III.   <u>ARGUMENT</u>

### A.   <u>STANDARD ON A MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is proper if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. <u>Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh</u>, 229 F.3d 435, 441 n. 3 (3d Cir. 2000). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The motion must be granted unless the nonmoving party designates specific facts in discovery materials or affidavits showing a genuine material factual issue that can only be resolved by a trial.  <u>Id</u>., at 324; Fed.R.Civ.P.56 (e). "Material" facts are those that might affect the outcome of the suit under the substantive law governing the claims made. An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" in light of the burdens of proof required by substantive law. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248, 252 (1986).

Furthermore, credibility determinations are jury functions and are not appropriate for a judge to make in ruling on a motion for summary judgment.

Rogers v. United States, 696 F. Supp. 2d 472 (W.D. Pa. 2010) (citing Anderson, supra, 477 U.S. at 248). When considering exhaustion in the context of a motion for summary judgment, "a district court may not make credibility determinations or engage in any weighing of evidence." Paladino v. Newsome, 885 F. 3d 203, 209-210 (3d Cir. 2018). "Rather, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." Id. at 2010.

### B.   PLAINTIFF HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT

The DOC defendants claim that plaintiff is precluded from pursuing his claims against them because he failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). This argument fails because: This argument fails because: the grievance appeal forms were not available to plaintiff during the time that he was transferred numerous times to and from other prisons during the grievance appeal time period; and the conflict between the prison records and plaintiff's deposition testimony regarding exhaustion is a credibility determination that creates a genuine issue of material fact that is not appropriate for summary judgment.

1. Plaintiff Exhausted Available Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e (a), requires a prisoner

confined in jail to exhaust administrative remedies that are available prior to bringing a section 1983 lawsuit with respect to prison conditions. Under the PLRA, a prisoner need exhaust only "available" administrative remedies. <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1856 (2016). Under § 1997e (a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. <u>Id</u>. at 1858. An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." <u>Id</u>. at 1859 (<u>citing</u> <u>Booth v. Churner</u>, 532 U.S. 732, 738 (2001)).

First, as <u>Booth</u> made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. <u>Ross</u>, 136 S. Ct. at 1859 (<u>citing</u> <u>Booth v. Churner</u>, 532 U.S. 732, 736, 738 (2001)); <u>see</u> <u>also</u> <u>Shifflett v. Korszniak</u>, 934 F.3d 356, 365 (3d Cir. 2019).

Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. <u>Id</u>. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. <u>Id</u>. When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available." <u>Id</u>. And finally, the same is true when prison administrators

thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation, such interference with an inmate's pursuit of relief renders the administrative process unavailable. Id. at 1860.

There are many situations and circumstances in which the Courts have found that grievance procedures are unavailable to inmates, thus holding that a prisoners' claims cannot be dismissed under particular factual circumstances. Courts have found prison grievance remedies unavailable under many fact-specific circumstances, including the following: because a prisoner was misled about the grievance process (Swisher v. Porter County Sheriff's Dept., 769 F.3d 553, 555 (7th Cir. 2014)); due to threats and intimidation (Ross v. Blake, supra, 136 S. Ct. at 1860 n.3); due to prison rules that obstruct using the grievance system (Church v. Oklahoma Correctional Industries, 2011 WL 4376222, *7 (W.D. Okla. Aug. 15, 2011), *report and recommendation adopted*, 2011 WL 4383225 (W.D. Okla., Sept. 20, 2011)); and due to denial of necessary forms (Hill v. Snyder, 817 F.3d 1037, 1041 (7th Cir. 2016)). See also Hill v. O'Brien, 387 F. App'x 396 (4th Cir. 2010); Dale v. Lappin, 376 F.3d 652, 655–56 (7th Cir. 2004).  A remedy that prison officials prevent a prisoner from "utiliz[ing]" is not an "available" remedy under 1997e(a), such that plaintiff's allegations raise an inference that he was prevented from utilizing the prison's administrative remedies. Miller v. Norris, 247 F.3d 736,

740 (8th Cir. 2001) (<u>citing</u> <u>Johnson v. Garraghty</u>, 57 F. Supp. 2d 321, 329 (E.D. Va. 1999)).

Plaintiff here properly exhausted available administrative remedies. After he filed his first level grievance and it was later denied as frivolous, his second and third level appeals were due during a time when he was being transferred to and from York County Prison and numerous state prisons in the Fall of 2016. The transfers caused obstacles for plaintiff to be able to prepare, submit and copy his grievance appeals in accordance with the deadlines in the DOC Inmate Handbook. In addition, because the appeal deadlines also fell during a time when plaintiff was housed on R block of SCI Camp Hill, where paper and pens and pencils were made unavailable to inmates, which was another obstacle for plaintiff to be able to timely follow the appeal process in the DOC Inmate Handbook. All of these barriers caused plaintiff's administrative remedies to be unavailable and the efforts that he did make during this time to grieve the incident involving his fall down the stairs and the inadequate medical treatment that followed are sufficient to allow the Court to find that plaintiff's available administrative remedies were exhausted. Summary judgment should therefore not be granted based on this defense.

1. The Conflict Between Plaintiff's Deposition Testimony and the DOC Prison Records Creates a Genuine Issue of Material Fact

The DOC defendants claim that the court should just rely on the DOC grievance records to find that plaintiff did not exhaust available administrative

15

remedies. The evidence taken into account by the DOC defendants does not acknowledge that plaintiff's deposition testimony contradicts some of the grievance records and therefore creates an issue of material fact that cannot be resolved through a Motion for Summary Judgment.

Credibility determinations are jury functions and not appropriate for a judge to make in a ruling on a motion for summary judgment. Rogers v. United States, 696 F. Supp. 2d 472 (W.D. Pa. 2010) (citing Anderson, supra, 477 U.S. at 248). See also Blake v. Race, 487 F. Supp. 2d 187, 202 (E.D.N.Y. 2007) (The rule in determining whether to grant summary judgment is that credibility determinations, weighing evidence and drawing inferences are functions for the jury, not the court.) (citing Anderson, supra, 477 U.S. at 255).

In Paladino v. Newsome, 885 F. 3d 203, 204, 210 (3d Cir. 2018), a case strikingly similar to the within case, the Court found that, where there is a conflict between the prison's records and appellant's deposition testimony, it creates a genuine issue of material fact regarding exhaustion of appellant's excessive force claim under the Eighth Amendment. In Paladino, the prison records introduced in the lower court established that the appellant did not appeal the prison's responses to the grievance forms. Id. at 208. However, appellant testified at his deposition that he appealed numerous responses that vanished after they were submitted and/or filed. Id.  The Court held that "a single non-conclusory affidavit or

witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." <u>Id</u>. at 209 (<u>citing</u> <u>Lupyan v. Corinthian Colleges, Inc.</u>, 761 F. 3d 314, 320 (3d Cir. 2014). This is true, even where the information is self-serving. <u>Id</u>. The Court emphasized that, in considering a motion for summary judgment, "the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." <u>Id</u>. at 210. The Court specifically held that, while it is possible that appellant misrepresented facts when he testified that he filed forms regarding the assault that occurred in the prison, it is equally possible that he did not. Id. The Court further went on to say that it is not unheard of for a grievance form to be lost. <u>Id</u>.

      In the instant case, while the DOC has produced grievance records only in regard to plaintiff's first level of appeal to the SCI Camp Hill Grievance Coordinator, plaintiff testified that he sent a grievance appeal to the warden and a final grievance appeal to SOIGA. Ex. A at pp. 39, 41-42, 46-49; Ex D. These differing accounts clearly present an issue of material fact and would force the Court to make a credibility determination should it grant summary judgment based on plaintiff's failure to exhaust administrative remedies. Summary judgment should therefore not be granted based on this defense.

## IV.    <u>CONCLUSION</u>

For all the reasons stated above, the DOC Defendants' Motion for Summary

Judgment should be denied.


<u>/s/ Laurie R. Jubelirer</u>

Laurie R. Jubelirer, Esquire
Jubelirer Law, LLC
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALMER LEE REYAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:18-cv-01485 |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | (Judge Mariani) |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, CAPTAIN RANDY | : | JURY TRIAL DEMANDED |
| EVANS , SERGEANT RICHARD | : | |
| HIBSHMAN, CORRECTIONS OFFICER | : | |
| SAMUEL LARTY, CORRECTIONS | : | |
| OFFICER RICHARD KISTLER, | : | |
| CORRECTCARE SOLUTIONS, DR. | : | |
| VANITHA ABRAHAM, DR. THEODOOR | : | |
| VOORSTAD, DR. SCOTT MORGAN, | : | |
| DR. JEAN HOLDREN, PA-C NICOLE | : | |
| ODEM, PA-C MARK HAMMER, | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Laurie R. Jubelirer, Esquire, attorney for plaintiff, hereby certify that a

true and correct copy of the within Motion was filed electronically via the Court's

ECF system on the date below and is available for viewing and downloading by all

counsel of record.

By:   /s/ Laurie R. Jubelirer
Laurie R. Jubelirer, Esquire
Jubelirer Law, LLC
Attorney for Plaintiff

Date: March 13, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALMER LEE REYAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:18-cv-01485 |
| | : | (Magistrate Judge Arbuckle) |
| v. | : | (Judge Mariani) |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, CAPTAIN RANDY | : | JURY TRIAL DEMANDED |
| EVANS , SERGEANT RICHARD | : | |
| HIBSHMAN, CORRECTIONS OFFICER | : | |
| SAMUEL LARTY, CORRECTIONS | : | |
| OFFICER RICHARD KISTLER, | : | |
| CORRECTCARE SOLUTIONS, DR. | : | |
| VANITHA ABRAHAM, DR. THEODOOR | : | |
| VOORSTAD, DR. SCOTT MORGAN, | : | |
| DR. JEAN HOLDREN, PA-C NICOLE | : | |
| ODEM, PA-C MARK HAMMER, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF WORD COUNT

I, Laurie R. Jubelirer, Esquire, attorney for plaintiff, hereby certify that the

within Response in Opposition to the DOC Defendants' Motion for Summary

Judgment has a word count of less than 5000 words.

By:   /s/ Laurie R. Jubelirer
Laurie R. Jubelirer, Esquire
Jubelirer Law, LLC
Attorney for Plaintiff

Date: March 13, 2020